STATE, Appellant, vs. BROCKMAN, Respondent.

*December 9, 1938—January 10, 1939.*

The cause was submitted for the appellant on the brief of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Clarence J. Dorschel,* district attorney of Brown county, and for the respondent on that of *A. B. Fontaine* and *G. F. Clifford,* both of Green Bay.

NELSON, J.   A new trial was granted because the circuit court was of the view that certain incriminating evidence adduced upon the trial was unlawfully obtained in violation of the defendant's constitutional rights guaranteed to him both by sec. 11, art. I, of the constitution of this state and the Fourth amendment to the constitution of the United States.   The defendant contends that although the evidence was obtained by virtue of a search warrant issued by the municipal court of Brown county, the search warrant was, as a matter of law, improperly issued, because the evidence adduced prior to its issuance was insufficient to show probable cause for issuing it.   Sec. 11, art. I, of our constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The Fourth amendment to the constitution of the United States is practically identical.   Ch. 363, Stats., which relates to search warrants, provides in part as follows:

"363.01   *Warrant to issue, when.*   When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that personal property has been stolen

or embezzled or obtained by false tokens or pretenses and that the complainant believes that it is concealed in any particular house or place, the magistrate, if he be satisfied that there is cause for such belief, shall issue his warrant to search for such property."

"363.02  *In what cases.*  Any such magistrate, when satisfied that there is reasonable cause, may also, upon like complaint made on oath, issue such warrants in the following cases, to wit. . . .

"(9) To search for and seize any intoxicating liquor, fermented malt beverages, or alcohol, possessed for the purpose of evading any law of this state, or property designed for the unlawful manufacture of intoxicating liquor, fermented malt beverages or alcohol. Any property seized on any such warrant shall not be taken from the officer seizing the same on any writ of replevin or other like process."

In *State v. Baltes,* 183 Wis. 545, 549, 198 N. W. 282, it was held that the words "cause" and "reasonable cause" contained in ch. 363, Stats., are synonymous with the words "probable cause" found in the constitutional provisions. It was there said:

"The term probable cause has a well-defined meaning in the law, which is the existence of such facts and circumstances as would excite an honest belief in a reasonable mind, acting on all the facts and circumstances within the knowledge of the magistrate, that the charge made by the applicant for the warrant is true. . . . It follows from the above definitions of probable cause that it is not necessary that there should be positive proof of the existence of the facts upon which the issuance of a search warrant is based. It is sufficient that the sworn proof is of such a character as to induce in the mind of the magistrate an honest belief that they exist."

That language was later approved in *Glodowski v. State,* 196 Wis. 265, 220 N. W. 227. In *Kraus v. State,* 226 Wis. 383, 387, 276 N. W. 303, in further discussing the law applicable to the issuing of search warrants by magistrates, this court said:

"The evidence must be sufficiently detailed and of such a character as to permit the magistrate to come to his own con-

clusion whether probable cause exists. It must not be so meager as to constitute merely the conclusions of the applicant and an invasion of the judicial function of the magistrate."

Keeping in mind this preliminary discussion as to the established law relating to the issuing of search warrants, we may now consider the evidence upon which the magistrate acted and from which he found that probable cause existed for issuing a search warrant. On October 1, 1935, R. C. McLaughlin, an enforcement inspector for the beverage division of this state, applied to the municipal judge of Brown county for a search warrant. He was sworn and testified in substance that on the preceding day he received a complaint that there was an alcohol distillery on the premises sought to be searched, that he went out there after dark the night before and got as close to the building as he could, and that coming from the premises was an odor of fermenting mash; that he smelled the odor of mash; that he was able to identify the odor and knew it was illicit liquor they were making; that no permit had been issued by the state treasury department to manufacture liquor on those premises, and that he desired a search warrant for both intoxicating liquor and manufacturing equipment. Asked by the magistrate to state the information again, he testified:

"My reasons are, yesterday I got a complaint or information rather there was a still operating on the premises. Last night after dark I went out and prowled as close to the house and barn as I could; coming from those premises, evidently from the house I judge from the direction that the odor was coming from, there was an odor of fermenting mash."

The precise question for decision is whether such evidence was sufficient to induce in the mind of the magistrate an honest belief that illicit liquor was being manufactured upon the premises and that liquor-manufacturing equipment existed there. No formula or standard may be laid down which

may be applied to the facts of every situation. Our own definition or standard of probable cause is as satisfactory as any, *i. e.,* "the existence of such facts and circumstances as would excite an honest belief in a reasonable mind, acting on all the facts and circumstances within the knowledge of the magistrate, that the charge made by the applicant for the warrant is true."

It is earnestly contended by the defendant that the odor of fermenting mash was insufficient to support a finding of probable cause by the magistrate. In numerous cases it has been held that the odor of fermenting mash, or the odor of intoxicating liquor, unless corroborated by other evidence, is not sufficient to induce in the mind of an officer probable cause for believing *that a crime is being committed in his presence,* which will justify him in breaking into and entering a residence or building without a warrant of arrest or a search warrant. In *Taylor v. United States,* 286 U. S. 1, 52 Sup. Ct. 466, 76 L. Ed. 951, it was held that prohibition agents who, upon approaching a garage, got an odor of whiskey coming from within and who, aided by a searchlight, looked through a small opening and saw many cardboard cases which they thought probably contained jars of liquor, were not justified in breaking into the garage and making a search and seizure prior to the arrest of the defendant, Taylor, and that therefore such evidence was unlawfully obtained and should have been suppressed. The court said (p. 6):

"Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guarantees against unreasonable search. This record does not make it necessary for us to discuss the rule in respect of searches in connection with an arrest. No offender was in the garage; the action of the agents had no immediate connection with an arrest. The purpose was to secure evidence to support some future arrest."

It was, however, clearly intimated by the court that had the officers procured a search warrant, a subsequent search would not have been illegal. The court said (p. 6) :

"Although over a considerable period numerous complaints concerning the use of these premises had been received, the agents had made no effort to obtain a warrant for making a search. They had abundant opportunity so to do and to proceed in an orderly way even after the odor had emphasized their suspicions; there was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility."

Both before and since *Taylor v. United States, supra,* was decided, many courts have held that searches of residences or buildings without warrants cannot be justified if based upon odors alone. Such evidence is generally held to be insufficient to give rise to a conclusion of probable cause that a crime is being committed in the presence of an officer. See Cornelius, Search and Seizure (2d ed.), § 174, and the following cases : *Raniele v. United States* (8th Cir.), 34 Fed. (2d) 877; *United States v. Hirsch* (D. C.), 57 Fed. (2d) 555, 556; *Leubbert v. United States* (8th Cir.), 74 Fed. (2d) 357; *Parks v. United States* (5th Cir.), 76 Fed. (2d) 709; *Cardinal v. United States* (6th Cir.), 79 Fed. (2d) 825; *Van Eeckhoute v. United States* (8th Cir.), 79 Fed. (2d) 827; *United States v. Kind* (2d Cir.), 87 Fed. (2d) 315, 316; *United States v. Kaplan* (2d Cir.), 89 Fed. (2d) 869, 871; *United States v. Preisen* (2d Cir.), 96 Fed. (2d) 138. Nearly all of those cases involved searches by officers without warrants of arrest or without search warrants, which were sought to be justified on the ground that offenses were being committed in the presence of the officers. As before stated, it was intimated in *United States v. Taylor, supra,* that a search warrant should have been procured before making the search, and that if a search warrant had been procured, the search would have been reasonable. In *United States v. Hirsch, supra,* it was held that the odor of

fermenting mash was not sufficient to justify the officers in concluding that a crime was being committed in their presence. The court, however, said:

"It may be that such evidence as they had gathered was sufficient for them to have obtained a search warrant on probable cause."

In *United States v. Kind, supra,* it was held that the smell of alcohol alone did not strip the tenant of a garage of his constitutional guarantee against unreasonable search. However, the court, in its opinion, said:

"The agents had ample time to apply for a warrant for a search, for they said they received the information or the tip in the afternoon of April 18th. The arrest was made early the next morning. Thus there was abundant opportunity to obtain a warrant and there was no probable or material change in the situation during the time necessary to secure the warrant."

In *United States v. Kaplan, supra,* a search was held unwarranted, but the court said:

"The officers could have applied for a warrant which—as was at least intimated in *Taylor v. United States*—might then have been valid."

From the many cases examined we conclude: That a search of a house or other building, based upon identified odors alone, cannot be justified on the theory that a crime is being committed in the presence of an officer; that a search of a house without a search warrant, unless made as an incident to and following an arrest lawfully made either with or without a warrant, is unreasonable; that evidence which is insufficient to justify a conclusion by an officer that there is probable cause for believing that a crime is being committed in his presence, may nevertheless be sufficient to excite an honest belief in a reasonable mind, acting on all the facts and circumstances within the knowledge of the magistrate, that the charge made by the applicant for a search warrant is true.

In our view, the sense of smell is quite as reliable as that of the other senses. The odor of fermenting mash, which

ordinarily means the odor of distilling mash, can no doubt be clearly identified by those who are experienced in the service of enforcing the laws against the manufacture of illicit liquor. While most citizens are not familiar with the odor of fermenting mash and their testimony in regard to it would be of little or no probative value, the testimony of a trained enforcement officer cannot be so regarded. Most lay people are familiar with the odors of roasting coffee or baking bread, and either of such odors, when identified, would furnish most cogent proof that coffee was being roasted or bread was being baked. So we are not disposed to follow the rules of some courts to the effect that odors and smells testified to even by honest witnesses are of little or no probative value. We therefore conclude: That the evidence given under oath before the examining magistrate was sufficient to support his finding of probable cause, justifying the issuance of the search warrant; that the search was therefore not unreasonable, that the evidence obtained upon the search of the premises was properly admitted in evidence and therefore the constitutional rights of the defendant were not violated. The same conclusions were reached in *People v. Flaczinski,* 223 Mich. 650, 194 N. W. 566; *People v. Warner,* 221 Mich. 657, 192 N. W. 566; *People v. Lavendowski,* 329 Ill. 223, 160 N. E. 582; *United States v. Phillips* (D. C.), 34 Fed. (2d) 495; *United States v. Kardos* (D. C.), 31 Fed. (2d) 204; *Jozwich v. United States* (7th Cir.), 288 Fed. 831. The trial court, in our opinion, erred in holding that the evidence obtained upon the search should have been suppressed and in granting a new trial for that reason.

*By the Court.*—Order reversed, and cause remanded with directions to deny the defendant's motion for a new trial and for further proceedings according to law.

MARTIN, J., took no part.