State, Respondent, vs. Harris, Appellant.

*November 15—November 29, 1949.*

*George A. Bowman* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwau-

kee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

ROSENBERRY, C. J. The only question raised in this case is stated by the defendant thus:

"Was there sufficient evidence in the affidavit of Officer Beck to justify the finding of probable cause from which the magistrate could determine whether said search warrant should issue?"

Sec. 363.02, Stats., provides:

"Any such magistrate, when satisfied that there is reasonable cause, may also, upon like complaint made on oath, issue such warrants in the following cases, to wit: . . . (4) To search for and seize any gaming apparatus or implements used or kept and to be used in unlawful gaming in any gaming house or in any building, apartments or place resorted to for the purpose of unlawful gaming."

Secs. 348.17 and 348.171, Stats., prohibit the operation of the game commonly called "policy," and authorize the search of premises in cases where it is suspected, or the complainant has probable cause to suspect, that any house or other building is wilfully used as and for a gaming house. No contention is made that the provisions of these sections do not include the operation carried on by the defendant.

The defendant contends that the evidence is insufficient to sustain a finding of probable cause for the issuance of the search warrant for two reasons: First, that the testimony of Officer Beck upon which the search warrant was issued must be found within the four corners of his affidavit. Second, that the magistrate could not consider the opinion of Police Officer Beck in determining whether the evidence supported the conclusion that there was probable cause.

It appears that in the course of the examination the magistrate was handed by the police officer, in connection with the giving of his evidence, a criminal record of one Carl Estrada, who was involved in the operation of the policy shop,

which was offered and received. This record was taken from the official records of the department of police. It is not contended that it is an incorrect copy, simply that the court had no right to consider it because the magistrate did not make it a part of the record by return or reference. In his affidavit Officer Beck made the following statement: "I observed Carl Estrada, a known and convicted policy gambler." It appears from the criminal record that while Estrada had been convicted of other offenses he had not been convicted of policy gambling. While this was received and considered by the magistrate it was not filed with the magistrate at the time but was subsequently made a part of the records of the court upon motion of the defendant and without objection on the part of the district attorney.

Technically of course the criminal record of Estrada should have been made a part of the record in the proceedings before the magistrate. The defendant, however, having moved, apparently for some reason of his own that is should be considered a part of the record, the district attorney having made no objection and the court, before whom the motion was made, having ordered it made a part of the record, the defendant thereby waived his right to object to the amendment of the record and cannot now be heard to complain.

We come now to the second contention, that there is not sufficient evidence to sustain a finding of probable cause. As has been often said in cases of this class, each case stands upon its facts. In *Kraus v. State* (1937), 226 Wis. 383, 386, 276 N. W. 303, the following definition of probable cause was approved:

"Probable cause is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty."

The matter of what constitutes probable cause is fully discussed and the cases are cited in *Wood v. State* (1945), 185

Md. 280, 285, 44 Atl. (2d) 859. From the opinion in that case we quote the following:

" 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.' *Stacey v. Emery,* 97 U. S. 642, 645, 24 L. Ed. 1035; *Carroll v. United States, supra,* 267 U. S. at page 161, 45, 69 L. Ed. 543; *Goodman v. State, supra,* 178 Md. at pages 9–10, 11 Atl. (2d) 635. Mr. Justice WASHINGTON's definition of probable cause is 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged.' *Stacey v. Emery, supra; Carroll v. United States, supra; Dumbra v. United States,* 268 U. S. 435, 441, 69 L. Ed. 1032; *Goodman v. State, supra,* 178 Md. at page 10, 11 Atl. (2d) 635. Probable cause is more than suspicion or possibility but less than certainty or proof."

To the same effect is *State v. Mier* (1948), 252 Wis. 221, 31 N. W. (2d) 148. See also *State v. Brockman* (1939), 231 Wis. 634, 283 N. W. 338.

On the authority of *Hessian v. State* (1928), 196 Wis. 435, 220 N. W. 232, the defendant argues that the opinion of Officer Beck set forth in his affidavit for search warrant, is without evidential value. It is considered that this contention is without merit.

In cases of this kind the experience and special knowledge of police officers, who are applying for a search warrant, are among the facts which may be considered. *State v. Brockman, supra; Steele v. United States No. 1* (1925), 267 U. S. 498, 45 Sup. Ct. 414, 69 L. Ed. 757; *Foreman v. State* (1943), 182 Md. 415, 35 Atl. (2d) 171; *Goodman v. State* (1940), 178 Md. 1, 11 Atl. (2d) 635.

The facts upon which the applicant for a search warrant bases his opinion must appear in the record, but the idea that a trained, experienced police officer may not state his

conclusions from what he saw, heard, and smelled, the facts being stated, is certainly a novel one. There would be little merit in securing able, trained men to guard the public peace if they could not conclude from what they saw, heard, and smelled, that the law was being violated. *State v. Brockman, supra.*

In *Steele v. United States No.1, supra,* it is said (p. 505) :

"What Einstein saw and ascertained was quite sufficient to warrant a man of prudence and caution and his experience in believing that the offense had been committed of possessing illegally whiskey and intoxicating liquor, and that it was in the building he described."

In this case not only Officer Beck but the magistrate had had much experience in the consideration and disposition of cases of this character. On the motion to suppress in the municipal court the trial court in its opinion made the following statement:

"It seems to me that we have here a situation where the officer, who brought the information to Judge NEELEN and testified under oath, reported this similarity of activity on the part, as he denominated him, of a known policy pickup man, and that he submitted the record, while it doesn't substantiate any policy convictions, it does indicate characteristic policy activity, which the court had before it and which was introduced in district court and again here as auxiliary to the affidavit. It seems to me that that gave sufficient basis for the magistrate to operate in the exercise of his judicial function.

"On the facts here, considering the objective, and that was the discovery of policy paraphernalia, and the magistrate being entitled fully to exercise his experience in reflecting upon the operations of that type of game, that he had sufficient jurisdiction there to exercise his honest judgment upon the facts elicited. After all, it is a matter of common knowledge, particularly on the part of the magistrate who deals with criminal actions all of the time, and of course that again is the point referred to in the first *Mier Case* [*State v. Mier* (1948), 252 Wis. 221, 31 N. W. (2d) 148], that the

magistrate doesn't have to have a description of all of the minute details of the gambling operation, so a magistrate may, on the basis of his experience, conclude that policy is a game that doesn't come in one package but consists of interlocking operations in which numerous persons must be involved before the consummation of the game, in other words, the distribution of the slips, the taking of the money and the turning in of those slips, and the necessity of somebody being responsible for the turning in and the picking up and so forth, until they are finally relayed to the place where the lottery itself is held, which would enable the magistrate to conclude that there is an afternoon and evening drawing."

In this conclusion we concur.

If the contentions made by the defendant in this case were sound a magistrate in order to issue a search warrant would be obliged to have before him evidence sufficient to sustain a conviction. That certainly is not the law. If it reasonably appears to the magistrate from all the evidence before him that the articles sought are probably to be found in the place described he is justified in issuing a search warrant.

*By the Court.*—The judgment appealed from is affirmed.